¶ 34. I agree with the conclusion reached by the majority. I write separately to address the manner in which this case got to this Court.
 ¶ 35. Without doubt, the majority correctly opines that this case deserved to be considered and ultimately decided on its merits. No legitimate purpose would be served in the case sub judice by a dismissal of this appeal based on the failure to timely perfect an appeal. When a defendant has been convicted of capital murder and sentenced to a term of life imprisonment without the benefit of parole, and that defendant, as here, indicates in any way a desire to appeal the conviction and sentence, that defendant should be entitled to have at least one appellate court review the proceedings in the trial court. *Page 1040 
 ¶ 36. According to the majority opinion, new counsel was appointed for Coleman on March 31, 1998, and by December 10, 1998, some two hundred fifty-four (254) days later, no notice of appeal had been filed. On December 10, 1998, the learned trial judge, obviously being possessed with a sense of fairness and resolve to have cases decided on their merits and not dismissed because of procedural non-compliance by attorneys, sua sponte granted an out-of-time appeal. Even with that reprieve from the trial court, appointed counsel waited until March 30, 1999 — another one hundred ten (110) days — before filing a notice of appeal. The fact that the trial judge, at the time of granting an out-of-time appeal, failed to specify a time for filing a notice of appeal is absolutely of no moment. The lawyer, without any tutoring from the trial judge, should have been diligent in adhering to the applicable rules. "Thirty days" ought to be etched into the brain of every lawyer who anticipates an appeal in a criminal or civil case from the trial courts of this state to this Court.
 ¶ 37. The Mississippi Rules of Appellate Procedure (M.R.A.P.), offer unequivocal guidance to a lawyer desiring an appeal in this state. M.R.A.P. 3(a) states in pertinent part:
 An appeal permitted by law as of right from a trial court to the Supreme Court shall be taken by filing a notice of appeal with the clerk of the trial court within the time allowed by Rule 4.
M.R.A.P. 4(a) states in pertinent part:
 Except as provided in Rules 4(d) and 4(e), in a civil or criminal case in which an appeal or cross-appeal is permitted by law as of right from a trial court to the Supreme Court, the notice of appeal required by Rule 3 shall be filed with the clerk of the trial court within 30 days after the date of entry of the judgment or order appealed from.
Certainly relevant here is M.R.A.P. 4(e), which provides that the thirty (30) day period in a criminal case shall commence to run from the entry of the order denying post-trial motions or the imposition of sentence, "whichever occurs later." Finally, M.R.A.P. 4(g) grants the trial court authority to extend the time for filing a notice of appeal, even ex parte, for good cause shown, if such motion for extension of time is filed within the initial thirty (30) day period, or upon a showing of excusable neglect after notice to all parties, if such motion for extension of time is filed after the initial thirty (30) day period, but within the time as specified by M.R.A.P. 4(g).
 ¶ 38. Since court-appointed counsel obviously made no effort to comply with any of these rules, by the time the trial court took its action, sua sponte, that court had long since lost jurisdiction to extend the time for the filing of a notice of appeal, pursuant to the M.R.A.P., whether it be by motion of the defendant, or on the trial court's own motion. By the time December 10, 1998, rolled around with no notice of appeal in sight, the only recourse available to "right an obvious wrong" would have been for the defendant and/or his court appointed counsel to file a post-conviction relief ("PCR") motion pursuant to the legislatively enacted Mississippi Uniform Post-Conviction Collateral Relief Act," Miss. Code Ann. §§ 99-39-1 et seq. (2000 Supp. 2001). No doubt, had Coleman's counsel or Coleman, pro se, filed a PCR motion requesting an out-of-time appeal pursuant to Miss. Code Ann. § 99-39-5
(h) (Supp. 2001), Judge Patrick would have unhesitatingly granted relief. This fact is obvious because Judge Patrick, in an effort to understandably "right the wrong" as expeditiously as possible, granted such relief, sua sponte. In fact, Judge Patrick's actions, in the end, caused Coleman's case to reach this Court for a decision *Page 1041 
on the merits much quicker, via this Court's appropriate suspension of its rules pursuant to authority granted under M.R.A.P. 2(c). However, neither Judge Patrick nor this Court should have been placed in this situation by way of having to "bend" and suspend rules in order that a defendant could have his case decided on its merits. A very learned law professor once said that lawyers should strictly adhere to three (3) basic principles if they are going to properly and effectively represent their clients in court: "(1) Show up for court. (2) Show up for court, on time. (3) Show up for court, on time, prepared."
 ¶ 39. In this case, Coleman's lawyer failed to show up for court on time, and in fact waited until a year after appointment before he performed a very basic act — filing a one-page notice of appeal. If those desiring an appeal will read and follow M.R.A.P. 3(a), 4(a),10(b)(1), 11(b)(1), they most likely will be in good shape when it comes to getting their cases properly before this Court.
 ¶ 40. In sum, based on the facts and circumstances peculiar to this particular case, as reflected by the procedural history given by the majority, the proper procedure to have been followed would have been for a PCR motion for an out-of-time appeal to be filed in the trial court pursuant to Miss. Code Ann. § 99-39-5 (h). However, I certainly can find no fault in the majority's suspension of the rules in order to have the case decided on its merits as expeditiously as possible. In the end, justice was served, and not only was an expeditious resolution of this case on its merits fair to the defendant, it was also fair to Melanie Straughter's family members and friends.
 ¶ 41. All of this having been said, I agree with the majority as to the appropriate disposition of this case. The record reveals that a properly instructed jury appropriately found from the credible evidence that Coleman committed the most despicable act that one human being can commit against another human being. There was certainly no reversible error committed, and Coleman's conviction for the capital murder of Melanie Straughter and sentence of life imprisonment without parole should be affirmed.
McRAE AND SMITH, P. JJ., WALLER, COBB AND EASLEY, JJ., JOIN THISOPINION.